## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**MARGARITA ROSARIO**,

    Plaintiff,

v.                                               2:23-cv-119-SPC-NPM

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

---

## REPORT AND RECOMMENDATION

Plaintiff Margarita Rosario, on behalf of claimant L.L.,[1] a minor child, seeks judicial review of the denial of a child's supplemental Social Security income. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 10),[2] Rosario filed an opening brief (Doc. 13), and the Commissioner responded (Doc. 16). For the reasons discussed below, the decision of the Commissioner should be affirmed.

**I.   Eligibility for Supplemental Income and the Administration's Decision**

    **A.   Factual and procedural history**

On November 15, 2013, Rosario filed an application for supplemental security income benefits on L.L.'s behalf. (Tr. 342-51). Rosario asserted an onset date of

---

[1] Rosario is L.L.'s legal guardian.

[2] Cited as "Tr." followed by the appropriate page number.

November 1, 2013, alleging L.L. was disabled due to the following: speech delay, attention deficit hyperactivity disorder (ADHD), hearing, and developmental delay. (Tr. 76). As of the alleged onset date, L.L. was almost two and a half years old. (Tr. 76).

On February 25, 2014, on behalf of the administration, a state agency[3] determined L.L. was eligible for SSI disability benefits as of November 15, 2013. (Tr. 93-106). On December 4, 2015, the Commissioner conducted a continuing disability review and found that L.L. continued to be disabled.[4] (Tr. 117-19). However, the Commissioner revisited the issue again and found that L.L.'s disability had ceased as of December 12, 2019, when L.L. was around eight and a half years old. (Tr. 76, 120-26). The cessation of benefits was affirmed on reconsideration by a disability hearing officer. (Tr. 130-33, 138-62). At Rosario's request, Administrative Law Judge (ALJ) Norman Hemming held a telephonic hearing[5] on June 8, 2022. (Tr. 164, 49-74). On July 26, 2022, the ALJ issued an unfavorable decision finding L.L.'s disability ended on December 12, 2019, and that L.L., who was then eleven years old, had not become disabled again since that date. (Tr. 9-35,

---

[3] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

[4] This is also referred to as the comparison point decision (CPD). (Tr. 18).

[5] A telephonic hearing was held due to the circumstances presented by the coronavirus (COVID-19) pandemic. (Tr. 15).

76). Rosario's timely request for review by the administration's Appeals Council was denied. (Tr. 1-5, 339). Rosario then brought the matter to this court, and the case is ripe for judicial review.

### B.   Eligibility

A child under the age of eighteen is disabled if he has a medically determinable impairment that causes marked and severe functional limitations that are expected to last for at least one year or result in death. 20 C.F.R. § 416.906. When there has been a cessation of benefits, as here, the ALJ applies a three-step analysis to determine whether a child is no longer disabled. *Romero v. Saul*, No. 6:19-cv-02381-ACC-JRK, 2021 WL 664132, *2 (M.D. Fla. Feb. 3, 2021*), report and recommendation adopted sub nom. Romero v. Comm'r of Soc. Sec.*, 2021 WL 662236 (Feb. 19, 2021). The ALJ must first determine whether there has been medical improvement in the child's impairment. § 416.994a(b)(1). Medical improvement means "any decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child was] disabled or continued to be disabled." § 416.994a(c). If there has been medical improvement, the ALJ must then consider whether the child's impairments at the time of the most recent favorable decision, i.e., the CPD, still meet or medically equal the Listing they met or equaled at that time. § 416.994a(b)(2). If not, the ALJ will consider whether the child is currently disabled,

considering all the impairments the child has now, including any not presented or not considered in the earlier finding of disability. § 416.994a(b)(3). At this final step, the ALJ must determine whether the child has a severe impairment or combination of impairments and whether the impairment(s) meet or medically equal any of the impairments in the Administration's "Listing of Impairments." § 416.994a(b)(3); § 416.924(a)-(d); *see also Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278-79 (11th Cir. 2004) (explaining the evaluation process for children).

But even if the child's impairments do not medically equal the Listings, "the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings." *Shinn*, 391 F.3d at 1278. To make that determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities, using six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A child's impairments functionally equal the listings if the child's impairments or combination thereof result in "marked limitations in two of the domains [above], or an extreme limitation in one domain." *Shinn*, 391 F.3d at 1279 (quoting 20 C.F.R. § 416.926a(d)). Finally, "the burden is on the Commissioner to prove that the [child] is no longer disabled as of the cessation date because the [child] experienced 'medical improvement.'" *Gillet v. Colvin*, 237

F. Supp. 3d 1285, 1292 (M.D. Fla. 2017) (citation omitted).

### C. The ALJ's Decision

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Here, ALJ Hemming initially noted that the December 4, 2015 CPD demonstrated L.L.'s medical impairments included a learning disorder, speech and language impairment, attention deficit disorder, and oppositional defiant disorder, which functionally equaled a listed impairment. (Tr. 18). At the time of the CPD,

L.L.'s impairments resulted in the following limitations in the six domains of functioning:

- less than marked limitations in acquiring and using information
- <u>marked limitations</u> in attending and completing tasks
- <u>marked limitations</u> in interacting and relating with others
- no limitation in moving and manipulating objects
- <u>marked limitations</u> in caring for oneself
- no limitation in health and physical well-being

(Tr. 19) (emphasis in the original).

Following the three-step analysis, the ALJ first determined that medical improvement had occurred as of December 12, 2019. (Tr. 19). Next, the ALJ found that since December 12, 2019, the impairments that L.L. had at the time of the CPD no longer equaled a listed impairment. (Tr. 19-27). At the third step, the ALJ found that since December 12, 2019, L.L. had the following severe impairments: learning disorder, speech and language impairment; ADHD, oppositional-defiant disorder; and hearing loss not treated with a cochlear implant. (Tr. 27). However, the ALJ determined that since that time, L.L. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments. (Tr. 27-28). Specifically, the ALJ found that L.L. had no limitation in moving about and manipulating objects and "less than marked limitation" in the five other domains: acquiring and using information, attending and completing tasks, interacting and relating with others, caring for oneself, and health and physical well-

being. (Tr. 30-34). The ALJ therefore concluded that L.L.'s disability ended as of December 12, 2019, with no further evidence of disability since that date. (Tr. 35).

## II.  Analysis

The issue on appeal is whether the ALJ properly assessed the medical evidence of record. Specifically, Rosario challenges the ALJ's evaluation of the opinions of treating physician Dr. Berta M. Guerra[6] and consultative examiner Dr. Jose Nadine Garcon.

### A.  Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020)

---

[6] In her brief, Rosario identifies Dr. Guerra as "Marta Guerra, M.D." (Doc. 13 at 3). However, the record reflects the doctor's name is "Berta M. Guerra."

(quoting *Crawford*, 363 F.3d at 1158)). The key here is "whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." *Romero*, 2021 WL 664132, at *3 (quoting *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. The ALJ properly assessed the medical evidence of record

#### 1. The ALJ properly considered the opinion of L.L.'s treating psychiatrist, Dr. Berta M. Guerra

The opinions of L.L.'s treating physician are entitled to substantial or considerable weight unless good cause is shown for discounting them.[7] *See* 20

---

[7] Because L.L.'s application was filed on November 15, 2013, it is subject to the administration's pre-March 2017 regulations and the case law that construes and applies them.

- 8 -

C.F.R. § 416.927(c)(2); *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021). The Eleventh Circuit has concluded that good cause exists when: (1) the evidence does not support the treating physician's opinion; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. *See Simons*, 7 F.4th at 1104. When good cause exists, the ALJ may reject a treating physician's opinion, but he "must clearly articulate the reasons for doing so." *Id.* However, the ALJ need not specifically refer to every piece of evidence in his decision so long as the ALJ's decision is not a broad rejection that suggests the ALJ did not consider the record as a whole. *See Raymond v. Comm'r of Soc. Sec.*, 778 F. App'x. 766, 775 (11th Cir. 2019) (citations omitted).[8] When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical questions at issue; and (6) other factors that tend to support or contradict the opinion. *Loar v. Astrue*, No. 2:10-cv-593-FtM-29SPC, 2011 WL 5357629, *9 (M.D.

---

[8] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. See 11th Cir. R. 36–2.

Fla. Oct. 12, 2011), *report and recommendation adopted*, 2011 WL 5358670 (Nov. 7, 2011) (citing 20 C.F.R. § 404.1527(d)).

Here, the ALJ gave "little weight" to the opinion of Dr. Guerra upon finding that it was inconsistent with evidence showing L.L.'s "placement in a regular classroom and with [L.L.'s] mostly satisfactory grades." (Tr. 30). Dr. Guerra had opined that:

> [L.L.] had marked deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks . . . [and] marked limitation in attention and completing tasks . . . [along with L.L. being] moderately limited in the areas of interacting and relating to others, social functioning, caring for self, and acquiring and using information.

(Tr. 30, 1193-96). The ALJ, however, noted that for the 2020-2021 school year (3rd grade), L.L. had satisfactory performance with regard to paying attention, following rules and directions, and only needed improvement with completing tasks. (Tr. 21). Additionally, L.L. received satisfactory grades in art, introduction to computer science, music, physical education, science, and social studies, except his grade in language arts which needed improvement. (Tr. 20, 1188). L.L.'s individual educational plan (IEP) also showed that he was in a regular classroom 80 percent or more of the school day with accommodations such as oral presentation of directions and answer choices, and repetition of directions, which continued into the 2021-2022 school year. (Tr. 31, 1040, 1177).

Rosario argues that the ALJ's one-sentence rational for giving Dr. Guerra's opinion "little weight" fails to provide good cause. (Doc. 13 at 3-20). The best Rosario can offer is evidence that counters the ALJ's finding. (*Id.*) But the court should decline her invitation to reweigh the evidence and potentially come to a different conclusion. *See Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019) ("To the extent that Borges points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner."). In this case, the ALJ identified good cause for giving Dr. Guerra's opinion little weight—it was inconsistent with record evidence. As set forth above, the ALJ relied on substantial evidence of regular classroom attendance (with accommodations) and satisfactory grades to find that Dr. Guerra's opinion was inconsistent with the record evidence. It is improper to second guess the weight given a treating physician's opinion when the ALJ articulates a specific justification for it. *Hunter v. SSA*, 808 F.3d 818, 823 (11th Cir. 2015). The ALJ has done so here.

And even assuming the ALJ erred in not giving Dr. Guerra's opinion more weight, it would be harmless because Guerra's opinion corroborated the ALJ's finding that since December 12, 2019, L.L. did not have an impairment or a combination of impairments that functionally equaled the listings. *See Sarli v.*

*Berryhill*, 817 F. App'x 916, 917 (11th Cir. 2020) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) ("A harmless error—that is, one that does not affect the ALJ's ultimate decision—does not constitute a ground for reversal.").

Dr. Guerra opined that L.L. exhibited "mild" impairments in age-appropriate cognitive/communication function and L.L. was "moderately limited" in the domain of acquiring and using information, which is consistent with the ALJ's conclusion that L.L had a "less than marked" limitation in this domain. (Tr. 33, 1194-95); *see* 20 C.F.R. § 416.926(e)(2)(i) (defining a "marked" limitation as "more than moderate"). With respect to the domain of interacting and relating to others, Dr. Guerra opined that L.L. had a "mild" impairment in age-appropriate social functioning and L.L was only "moderately limited" in social functioning and interacting with others. (Tr. 1194-95). Even if the ALJ gave this finding considerable weight, it would not contradict his finding that L.L had less than marked limitations as to this domain. (Tr. 33-34). This is also true for the domain of caring for oneself since Dr. Guerra found that L.L. had a "mild" impairment in age-appropriate personal functioning and self-care and was "moderately limited" in this domain. (Tr. 34, 1194-96).

Finally, Dr. Guerra found that L.L. had "severe" inattention and was "markedly limited" in concentration, persistence, and pace, and attending and completing tasks, which supports Dr. Guerra's finding of a "marked limitation" in

the domain of attending and completing tasks. (Tr. 1194-95). But even so, this finding does not contradict the ALJ's conclusion that L.L. did not have an impairment that functionally equaled a listed impairment. (Tr. 28-34); *see Shinn*, 391 F.3d at 1279 (quoting 20 C.F.R. § 416.926a(d)) (A child's impairment "functionally equals" the listings, if the child's impairments or combination thereof result in "**marked limitations in two of the domains** [above], or **an extreme limitation in one domain**.") (emphasis added).[9]

### 2. Any failure by the ALJ to consider or articulate the weight accorded to consultative examiner Dr. Jose Nadine Garcon is harmless error

Dr. Garcon opined that "[s]upport and intervention by the Office of Disabilities seems substantiated by the findings that [L.L.] is experiencing emotional, academic, and behavioral deficits (e.g., oppositional tendencies, aggression, difficulties controlling his anger, impulsivity)." (Tr. 929). And Rosario asserts that the ALJ not only failed to articulate the weight accorded to this opinion, but that he failed to consider altogether. (Doc. 13 at 20).

As a general matter, a finding of "[w]hether a claimant meets the statutory definition of disabled is an administrative finding, not a medical opinion[,]" and therefore is reserved to the Commissioner, not a physician. *Proenza v. Comm'r of*

---

[9] Dr. Guerra did not offer an opinion as to whether L.L. suffered from limitations in the domains of moving about and manipulating objects or health and physical well-being. (Tr. 1193-96).

*Soc. Sec.*, No. 20-14237, 2021 WL 3073777, *2 (11th Cir. July 21, 2021) (citing 20 C.F.R. § 404.1527(d)(1); *see also Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1339 (11th Cir. 2021)). But offering an ultimate opinion as to disability is exactly what Dr. Garcon appears to be doing when she opined that "[s]upport and intervention by the Office of Disabilities seems substantiated[.]" Therefore, the ALJ did not err by not considering this portion of Dr. Garcon's opinion.

As to the reminder of Dr. Garcon's opinion—any error for failing to consider a doctor's opinion or findings or assign weight to them is harmless as long as there is no direct contradiction with the ALJ's ultimate decision. *See William v. Saul*, No. 8:18-cv-2402-T-AEP, 2020 WL 1527855, at *5 (M.D. Fla. Mar. 31, 2020); *see also Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975-76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion).

In this case, the ALJ did not specifically refer to Dr. Garcon's psychological consultant opinion or give it weight, however, he did state that he "reviewed all of the evidence of record" and "considered all the opinion evidence." (Tr. 15, 19). And, more importantly, Dr. Garcon's opinion is consistent with the ALJ's finding that

L.L. had "less than marked" imitations in all domains. For example, Dr. Garcon opined that L.L. had an IQ score at the lower end of average, and demonstrated satisfactory performance as to short-term memory, attention, the ability to follow simple and complex commands, general knowledge, the ability complete mental calculations, and social reasoning. (Tr. 925, 028). While Dr. Garcon observed that L.L.'s achievement testing revealed scores in the below average and average ranges, she found that L.L.'s learning disorders in reading and math were only "mild" and his learning disorder in written expression was only "mild to moderate." (Tr. 928-29). Dr. Garcon also noted that L.L. had a fair long-term memory. (Tr. 924). Such findings are consistent with and support the ALJ's conclusion that L.L. had "less than marked" limitations in the domain of acquiring and using information.[10] (Tr. 30).

Likewise, Dr. Garcon's opinions do not contradict the ALJ's findings as to L.L's limitations in the domain of attending and completing tasks[11] being "less than marked." (Tr. 31). Dr. Garcon described L.L.'s ADHD as "moderate," and found that L.L. had "satisfactory" attention and ability to follow simple commands as well

---

[10] Nonexclusive examples of limitations in acquiring and using information are a child's failure to understand words about space, size, or time, inability to rhyme words or sounds, difficulty recalling important things learned at school the prior day, difficulty solving math questions, and speaking in short, simple sentences. 20 C.F.R. § 416.926a(g)(3)(i)-(v).

[11] Nonexclusive examples demonstrating limitations in attending and completing tasks are the child's requiring extra supervision or being easily startled, distracted, overreactive, sidetracked, distracting to others, easily frustrated, and quick to quit tasks. 20 C.F.R. § 416.926a(h)(3)(i)-(v).

as good ability to follow complex commands, despite being fidgety in his seat, easily distracted and inattentive, and having poor concentration. (Tr. 924, 928).

Dr. Garcon also found that L.L. had "satisfactory" social reasoning skills and his judgment and impulse control were within "normal" limits even though he had poor deductive reasoning. (Tr. 924-25). In addition, Dr. Garcon observed that L.L. had good eye contact, intact hearing, logical speech content and thought process, a cooperative attitude, and good interactions with his grandmother. (Tr. 924). This too comports with the ALJ's findings that in the domain of interacting and relating with others, L.L. had "less than marked" limitations.[12] (Tr. 33-34).

Turning to the domain of caring for oneself,[13] Dr. Garcon observed that L.L. had "satisfactory" hygiene and grooming, and was able to complete daily activities of showering, dressing himself, and cleaning, but was not able to prepare small meals. (Tr. 924, 927-28). As stated, Dr. Garcon's findings support the ALJ's findings

---

[12] Nonexclusive examples of limitations in interacting and relating to others are when the child has no close friends, or friends are all older or younger than the child, the child avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences, has difficulty playing games or sports with rules, and has difficulty communicating with others. 20 C.F.R. § 416.926a(i)(3)(i)-(vi).

[13] Nonexclusive examples of limitations in not caring for oneself are when the child engages in self-soothing activities showing developmental regression, does not dress or bathe appropriately for the child's age because of an impairment(s) that affects this domain, engages in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignores safety rules, does not spontaneously pursue enjoyable activities or interests, and has disturbances in eating or sleeping patterns. 20 C.F.R. §416.926a(k)(3)(i)-(vi).

that L.L. had "less than marked" limitations in the domain of caring for yourself. (Tr. 34).

Dr. Garcon's other significant findings included that L.L. experienced emotional, academic, and behavioral deficits, but she described L.L.'s ADHD and oppositional-defiant disorder as "moderate," with all other learning disorders in written expression and reading and math being anywhere from mild to moderate. (Tr. 928-29). On the whole, Dr. Garcon's opinion supports the ALJ's finding that L.L. only suffered from "less than marked" limitations in all domains as none of the limitations exceeded moderate levels. *See* 20 C.F.R. § 416.926(e)(2)(i) (defining a "marked" limitation as "more than moderate"). Accordingly, any failure by the ALJ to consider Dr. Garcon's opinion or accord it weight is harmless error.

### III. Conclusion

Upon consideration of the submission of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk should be directed to enter judgment in defendant's favor.

Recommended on February 13, 2024.

_____
NICHOLAS P. MIZELL
United States Magistrate Judge